NELSON P. COHEN
United States Attorney

KAREN L. LOEFFLER
Assistant United States Attorney
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9
Anchorage Alaska 99513-7567
Phone: (907) 271-5071
Fax: (967) 271-1500
E-mail: aunnie.steward@usdoj.gov

Attorneys for Plaintiff

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | Case No. |
| ) | |
| Plaintiff, ) | |
| ) | **PLEA AGREEMENT** |
| vs. ) | |
| ) | |
| POLAR TANKERS, INC., ) | |
| ) | |
| Defendant. ) | |
| ) | |
| _____ ) | |

## I.   **INTRODUCTION**

A.     This document contains the complete Plea Agreement ("Agreement")

between the United States and defendant POLAR TANKERS, INC. (hereinafter

"Polar Tankers"). No other agreement, understanding, promise, or condition exists

between the parties. The Defendant understands this Agreement is limited to the United States Attorney's Office for the District of Alaska; it does not bind other divisions of the Department of Justice or other federal, state or local prosecuting authorities. The Defendant and its counsel understand this Agreement is not effective until the Agreement has been signed by the United States Attorney, the fully executed agreement has been filed with the Court, and the Court has accepted Defendant's guilty plea.

B.     The parties expressly agree that this Plea Agreement is entered into and is to be controlled by Federal Rule of Criminal Procedure 11(c)(1)(C). Both parties agree and understand that: (a) if the Court accepts this Agreement, neither the Defendant nor the Government may withdraw from this agreement; (b) if the Court rejects the Plea Agreement (including but not limited to the sentencing provisions herein), each party has the right to withdraw from this Agreement and proceed to trial; and (c) if the Court does not impose the sentence agreed upon herein by the parties, each party has the right to withdraw from this Agreement and proceed to trial.  The parties further agree and understand that pursuant to Fed. R. Crim. P. 11, no part of this agreement or any representation made by the Defendant in connection with the negotiation of or execution of this Agreement may be used against it in this or any other proceeding.

C.     Under the terms of this Agreement, the Defendant will execute a written waiver of indictment and plead guilty to the Information filed in this case in which it is charged with one felony count of violating the Act to Prevent Pollution from Ships, 33 U.S.C. § 1908(a).

D.     The parties agree that if the Defendant breaches this Agreement or if the Defendant's guilty plea is rejected, withdrawn, set aside, vacated or reversed, at any time, the United States will be free to prosecute the Defendant on all charges covered by this agreement. This includes felony charges that may have been brought but for this agreement.

E.     The United States and the Defendant agree that Chapter 8 of the United States Sentencing Guidelines governs this case with regard to any community service and probation imposed by the Court, consistent with the terms of this Rule 1 1(c)(1)(C) Agreement; however, the parties agree that pursuant to U.S.S.G. § 8C2.1, Chapter 8 of the Federal Sentencing Guidelines Manual does not apply to the determination of an appropriate fine in this case.

F.     The Defendant understands and agrees that this Agreement does not provide use immunity or derivative use immunity to the defendant or to any of its officers, employees or directors. The Defendant also understands and agrees that

this Agreement does not affect the status of potential criminal liability of any of its officers, employees or directors.

G.     This Agreement does not limit the rights of any party to provide the Court or the United States Probation Office with a full description of the Defendant's conduct, correct inaccuracies at any time, or speak at the time of sentencing consistent with the recommended provisions set forth in this Agreement. The parties agree to allocate at sentencing in favor of the joint recommendation regarding the appropriate sentence, as set forth in this Agreement.

H.     The defendant, by entering into this plea agreement, agrees to waive any right to have the facts that the law makes essential to the determination of punishment in this case either charged in the indictment, presented to a jury, or proven beyond a reasonable doubt.     Because this is a negotiated resolution of the case against the Defendant, the Defendant waives any claim for the award of attorney's fees from the United States.

## II.    <u>WHAT THE DEFENDANT AGREES TO DO</u>

The Defendant agrees the following obligations are material to this Agreement. The Defendant agrees that any violation of or failure to fulfill these obligations will be a material breach of this Agreement. If the Defendant breaches this Agreement, the Defendant understands the United States, in its sole discretion,

may withdraw from this Agreement and may reinstate prosecution against the Defendant on any charges, including felony charges, arising out of the investigation in this matter. Whether the Defendant has violated the terms of this Agreement will be determined by the Court at an appropriate hearing during which any of the Defendant's disclosures will be admissible and the United States' burden is by a preponderance of the evidence.

A.      Defendant agrees to plead guilty to one count of failing to maintain and causing the failure to maintain an Oil Record Book on the T/V Polar Discovery, in violation of Title 33 U.S.C. § 1908(a). Pursuant to this Agreement, the Defendant agrees to plead guilty to the Information and to admit the factual basis for its guilty plea as outlined herein.

B.      Waiver of Indictment: The defendant knowingly, intelligently and voluntarily agrees to be prosecuted by Information. Pursuant to Federal Rule of Criminal Procedure 7(b), Defendant further waives his right to have the charge against him presented to a federal grand jury and to be prosecuted by Indictment. Defendant agrees to execute a written waiver of Indictment and file it with the Court prior to entry of a guilty plea.

C.      Defendant agrees to freely and openly acknowledge responsibility for its acts and omissions, and the acts and omissions of its employees and agents, that

constitute the agreed upon factual basis for its guilty plea as outlined in this agreement.

D.     The Defendant agrees that the statutory maximum amount of the fine to be imposed for the count in the Information to which it agrees to plead guilty in this case is $500,000.00, 18 U.S.C. § 3571(c)(3), or twice the gross pecuniary gain resulting from the unlawful conduct or twice the gross pecuniary loss caused to the victims of the crime, whichever is greater, 18 U.S.C. § 3571(d).

E.     The Defendant agrees to pay a criminal fine in the total amount of five hundred thousand dollars ($500,000.00), payable in full at the time of sentencing.

F.     The Defendant further agrees that as a special condition of probation it will perform organizational community service, as specified herein, pursuant to § 8B1.3 of the United States Sentencing Guidelines and in furtherance of the principles provided for under 18 U.S.C. § 3553(a). The explicit goal of the Defendant's community service is to fund environmental projects and initiatives designed for the protection, preservation, and restoration of the environment and ecosystems in the waters of the United States along the coast of Alaska near Valdez and in Prince William Sound, including the coastal watersheds. These projects and initiatives are to include, but are not limited to, monitoring, study, restoration, and preservation of fish, wildlife and plant resources; monitoring,

study, clean-up, sampling and analysis of threats to the environment and its natural resources; and education, public outreach and enforcement of the law related to protecting the fish, wildlife and the environment in Alaska near Valdez and in Prince William Sound. Accordingly, the Defendant agrees to pay $2,000,000 to the National Fish and Wildlife Foundation ("NFWF") for use near Valdez and in Prince William Sound. The NFWF will use these funds consistent with their operations. The NFWF is a charitable and nonprofit corporation established by Congress pursuant to 16 U.S.C. § 3701 et seq. for the purpose of undertaking activities consistent with the mission of the United States Fish and Wildlife Service to further the conservation and management of the fish, wildlife, and plant resources of the United States, and its territories and possessions, for present and future generations.

G.     The Defendant agrees to fully fund and implement the Focused Environmental Management System ("Focused EMS") attached hereto and incorporated herein as part of this Agreement and to be made part of the judgment herein. Defendant shall spend approximately $5,000,000.00 (Five Million Dollars) to fully fund and implement the Focused EMS, including amounts already expended. Compliance and funding of the Focused EMS shall also be a special condition of Defendant's probation. Defendant understands that this amount may

not represent the full cost required to establish and implement the Focused EMS,
and Defendant agrees to assume all costs above and beyond this amount that are
reasonable and necessary to fully develop and implement the Focused EMS for its
full term. Polar Tankers shall provide bi-annual reports to the United States
accounting for these expenditures and reporting on the funding and implementation
of the Focused EMS. Defendant agrees that it shall be bound to fund, implement
and comply with all the requirements of the Focused EMS for a period of three (3)
years commencing with the Court's acceptance of this Agreement. The
Government shall have the right to request the Court to specifically enforce the
obligations of Polar Tankers under this Section.

H.      The Defendant agrees to be placed on organizational probation for a
term of three years. After Polar Tankers has completed two (2) years of its
probationary term, Polar Tankers may request the Court to terminate its probation.
If at the time of such request, Polar Tankers has submitted the Action Plan
Completion Certification to the Interested Parties in accordance with Section E(6)
of the Focused EMS and otherwise satisfactorily implemented the requirements of
this Agreement, the United States shall recommend early termination to the U.S.
Probation Office and the Court, and the Court shall have authority, in its discretion,

to enter an order terminating probation. The United States' recommendation shall not be unreasonably withheld.

I.    The Defendant agrees that the conditions of probation shall include that it shall commit no further violations of federal, state or local law. Minor deficiencies noted during U.S. Coast Guard vessel exams not regularly submitted by the U.S. Coast Guard for civil or criminal action will not be considered a violation of this provision. If a violation of law that would otherwise be a violation of this provision is voluntarily reported to the United States, and if the United States did not otherwise have knowledge of the violation, it shall be presumed that the violation is not grounds for revocation of probation or imposition of additional penalties, provided, however, that such presumption shall not be operative if the violation could reasonably have been prevented by implementation or enforcement of the provisions of the Focused EMS called for in this Plea Agreement.

J.    Defendant agrees to have a representative who is duly authorized by the Defendant's Board of Directors, and with authority to speak for the Defendant, appear and enter a guilty plea in this case and to also appear for imposition of sentence. The Defendant agrees to provide to the United States and the Court written evidence, in the form of a notarized resolution of its Board of Directors with corporate seals, certifying that the Defendant is authorized to plead guilty to

the Information in this case, and to enter into and comply with all provisions of this

Agreement, including development and implementation of the Focused EMS. The

resolution shall further certify that the President or Chief Executive Officer, or his

or her designee, is authorized to take these actions and enter into the Plea

Agreement and Focused EMS, and that all corporate formalities required for such

authorization, including but not limited to approval by Defendant's directors, have

been observed.

      K.     The Defendant agrees and understands that this Agreement is intended

to bind Polar Tankers, and that if the Defendant changes names, reorganizes,

merges, or otherwise ceases operations in its current form, the person or entity

acquiring the assets or taking over the operation of Defendant's company shall take

over the obligations of this Agreement, including the responsibility to develop,

implement, fund and maintain the Focused EMS. The Defendant further agrees to

provide the United States Attorney's Office for the District of Alaska and the

United States Probation Office for the District of Alaska with immediate notice of

any name change, business reorganization, sale or purchase of assets, divestiture of

assets, or similar action impacting the operation of its business or the tanker

vessels currently in its fleet. No change in name, change in corporate or individual

control, business reorganization, change in ownership, merger, change of legal

status, sale or purchase of assets, or similar action shall alter the Defendant's responsibilities under this Agreement. The Defendant shall not engage in any action to seek to avoid the obligations and conditions set forth in this Agreement. Nothing contained herein shall modify the provisions of Part I of the Focused EMS which provides for certain vessels ceasing to be subject to the Focused EMS in the event of certain changes in operational, management or manning control.

L.      The Defendant agrees that during the period of probation, and at all reasonable times and with as reasonable prior notice by the United States as practicable, it will provide the United States with full access to its ships, facilities, records (other than records subject to legal privilege), and employees for the purpose of  determining implementation and compliance with the Focused EMS including, but  not limited to, access to, and production and authentication of, all records (other  than records subject to legal privilege) regarding the subject matter of the Focused EMS. If Polar Tankers withholds any record on the basis of privilege, it shall so notify the Government and provide it with a privilege log with respect thereto. If the Government believes the record is not subject to privilege but Polar Tankers refuses to release it, a ruling from the U.S. District Court for the District of Alaska may be sought by the Government on whether or not the record or document is privileged. The decision of the Court shall be binding on all parties.

M.     This Agreement, together with all of the obligations and terms hereof, shall inure to the benefit and shall bind assignees, subsidiaries, successors-in-interest, or transferees of the Defendant.

N.     The Defendant agrees it will not seek any downward departures or adjustments to its sentence or judgment under the United States Sentencing Guidelines or any other authority, and will not in any way seek relief from the agreed upon fine, agreed upon community service payments, or agreed upon funding obligations for the Focused EMS.

O.     The Defendant understands that by pleading guilty it waives its right to appeal its conviction, assuming that the Court imposes sentence consistent with the terms of this Rule 11(c)(1)(C) agreement. The Defendant also understands and agrees that as consideration for the United States' commitments under this Agreement, and if the Court accepts this Agreement and imposes such sentence, it will knowingly and voluntarily waive its right, contained in 18 U.S.C. § 3742, to appeal the sentence, judgment and agreed conditions of probation imposed. Furthermore, assuming the sentence imposed is consistent with this Agreement, the Defendant also knowingly and voluntarily agrees to waive its right to collaterally attack its conviction, judgment, sentence, including all agreed conditions of probation. The only exceptions to this collateral attack waiver are as follows:

1) any challenge to its conviction or sentence alleging ineffective assistance of counsel--based on information not now known to the Defendant and which, in the exercise of reasonable diligence, could not be known by the time the Court imposes sentence; and 2) a challenge to the voluntariness of its guilty plea. The Defendant agrees that if its guilty plea is rejected, withdrawn, vacated, reversed, or set aside, or if its sentence including conditions of probation are vacated, reversed, set aside, or modified, at any time, in any proceeding, for any reason, the United States will be free to prosecute the Defendant on all charges arising out of the investigation of this case, including felony charges, for which there is probable cause. The Defendant waives any statute of limitation defense that could be asserted should prosecution be reinstated under this paragraph.

P.    Waiver of Sentencing Rights:  The Defendant agrees to waive its rights under the Supreme Court's decision  in Blakely v. Washington, 124 S. Ct. 2531 (2004), and the Ninth Circuit's decision in United States v. Ameline, 376 F.3d 967 (2004), to have a jury or other fact finder make factual determinations relevant to the sentence the Defendant will  receive beyond reasonable doubt. The Defendant explicitly agrees to the factual basis contained in this Agreement and agrees that the court may rely upon these facts as admitted for purposes of sentencing. The defendant further agrees to allow the district court to make

findings of fact relevant to the sentence the Defendant will receive by a preponderance of the evidence at the time of sentencing and consents to be sentenced by the District Court Judge pursuant to the United States Sentencing Guidelines.

## III.   WHAT THE UNITED STATES AGREES TO DO

A.     In exchange for the Defendant's guilty plea to the charge in the Information, and based on the information known to the United States at the time of this Agreement, the United States agrees not to seek additional criminal prosecution of the Defendant in the District of Alaska relating to the subject matter of this investigation, as outlined in the Information and the factual basis of this Agreement.  Furthermore, the United States agrees it will not seek additional criminal prosecution in the District of Alaska against the Defendant, or any other affiliated or related corporate entity, for environmental criminal violations or general criminal violations (1) relating to the January 16, 2004 oil record book violation described in this Agreement, or (2) based on any matters that were the subject of the Government's criminal investigation involving the Defendant and were known to the Government as of the date of this Agreement, including alleged violations on the T/V Polar Alaska and T/V Polar Endeavour.  This Agreement

does not limit the United States' right to prosecute any offenses based on facts of which it was unaware as of the date of this Agreement.

B.    In recognition of these corrective measures undertaken by Polar Tankers subsequent to the offense and the steps it took to cooperate with the government's investigation, the United States has agreed as provided in Section III(A) of this Agreement.

C.    The parties understand that this Agreement does not apply to any individuals, including but not limited to Defendant's present and former employees, officers, agents and contractors.  The parties further understand that this Agreement applies only to federal criminal charges and only binds the United States Attorney's Office for the District of Alaska.

D.    Defendant has discussed this Agreement with its attorneys and understands that nothing contained in this Agreement is meant to limit the rights and authority of the United States to take further civil or administrative action against the Defendant or any affiliated or related corporations, including but not limited to, any listing and debarment proceedings to restrict rights and opportunities of the Defendant to contract with or receive assistance, loans and benefits from United States agencies.  In light of the Defendant's commitments under the terms of this Agreement and the Focused EMS, the United States agrees

that if the Defendant makes a request it will bring this Agreement to the attention of any other civil or criminal authority who may seek to investigate the matter.

E.      If the Defendant's guilty plea is rejected, withdrawn, vacated, reversed, or set aside, or if the sentence is vacated, reversed, set aside, or modified, at any time, in any proceeding, for any reason, the United States will be free to prosecute the Defendant on all charges arising out of the investigation of this case for which there is probable cause.

## IV.     ADVISEMENT OF MAXIMUM PENALTIES

A.      The maximum statutory penalties for failing to maintain and causing the failure to maintain an Oil Record Book on the T/V Polar Discovery, in violation of Title 33 U.S.C. § 1908(a), as charged in this case, include: (1) a fine of $500,000.00 or twice the gross gain or loss resulting from the unlawful conduct, Title 18, United States Code, Section 3571, (2) Five years of probation, (3) a $100 mandatory special assessment, Title 18, United States Code, Section 3013(a)(2)(B).

B.      Unless otherwise provided, all payments will be by check or money order, and are to be delivered to the Clerk of Court, United States District Court, 222 W. 7th Ave. Box 4, Rm. 229, Anchorage, AK 99513-7564.

## V.   RECOMMENDATIONS AS TO SENTENCE

Pursuant to Fed. R. Crim. P. 11(c)(1)(C), the parties agree and recommend that the following sentence is appropriate and should be imposed in this case:

A.    The Defendant shall pay a criminal fine of $500,000.00 due and payable at the time of sentencing.

B.    As a special condition of probation, the Defendant will perform organizational community service pursuant to § 8B 1.3 of the United States Sentencing Guidelines, and in furtherance of the principles provided for under 18 U.S.C. § 3553(a), by paying a sum of two million dollars ($2,000,000.00) on the day of sentencing to the National Fish and Wildlife Foundation. The explicit goal of the Defendant's community service is to fund environmental projects and initiatives designed for the protection, preservation, and restoration of the environment and ecosystems in the waters of the United States along the coast of Alaska near Valdez and in Prince William Sound, including the coastal watersheds. These projects and initiatives are to include, but are not limited to, monitoring, study, restoration, and preservation of fish, wildlife and plant resources; monitoring, study, clean-up, sampling and analysis of threats to the environment and its natural resources; and education, public outreach and enforcement of the law related to protecting the fish, wildlife and the environment in Alaska near

Valdez and in Prince William Sound. Accordingly, the Defendant agrees to pay $2,000,000 to the National Fish and Wildlife Foundation ("NFWF") for use near Valdez and Prince William Sound. The NFWF will use these funds consistent with their operations. The NFWF is a charitable and nonprofit corporation established by Congress pursuant to 16 U.S.C. § 3701 et seq. for the purpose of undertaking activities consistent with the mission of the United States Fish and Wildlife Service to further the conservation and management of the fish, wildlife, and plant resources of the United States, and its territories and possessions, for present and future generations.

      C.    Because the above payments are agreed to as part of the resolution of a criminal investigation, the Defendant further agrees that it will not seek any reduction in its tax obligations as a result of these fine, community service and environmental project payments. In addition, since all the payments agreed to herein are part of the resolution of a criminal investigation, the Defendant will not characterize, publicize or refer to these payments or projects as voluntary donations or contributions. The Defendant may represent, however, that it suggested that payments be made in connection with this agreement to support environmental funds or projects.

D.     The Defendant shall pay a special assessment of $100 per count to the Victim's Assistance Fund, pursuant to Title 18, United States Code, Section 3013(a)(2)(B), on or before the date that the Court imposes sentence.

E.     The Defendant shall be placed on organizational probation for a period of three years, subject to early termination as provided in Section 11(G) of this Agreement.

F.     The following are the Court's standard conditions of probation that will be applicable to the Defendant:

1.     Within thirty days from the date of the judgment, the Defendant shall designate an official of the Defendant to act as the Defendant representative and to be the primary contact with the probation officer;

2.     The Defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;

3.     The Defendant shall notify the probation officer ten days prior to any change in principal business or mailing address;

4.     The Defendant shall permit a probation officer to visit the Defendant at any of its operating business sites;

5.     The Defendant shall notify the probation officer within seventy-two hours of any criminal prosecution, major civil litigation, or administrative proceeding against the Defendant; and

6. The Defendant shall not dissolve, change its name, or change the number under which it does business unless the judgment and all criminal monetary penalties imposed by the Court are either fully satisfied or are equally enforceable against the Defendant's successors or assignees.

7. The Defendant further acknowledges that the Probation Office may request the Court to appoint an expert to assist the Probation Office in evaluating Defendant's compliance with Defendant's obligations under the Focused EMS.

G. In addition to the standard conditions listed herein, the terms of probation shall include the following special conditions:

1. The Defendant shall commit no further violations of laws, regulations or environmental permits of the United States, including those for which primary enforcement has been delegated to a state.

2. The Defendant shall perform organizational community service as detailed in Section V.B above.

3. Defendant shall implement and fully fund all the requirements and obligations contained and anticipated by the Focused EMS.

// //

// //

## VI.  ELEMENTS OF THE OFFENSES

A.     In order to sustain a conviction for failing to maintain and causing the failure to maintain an Oil Record Book on the T/V Polar Discovery, in violation of Title 33 U.S.C. § 1908(a), as charged in the Information, the United States would have to prove beyond a reasonable doubt the following elements:

One:  the defendant, by and through the actions of its agents and/or employees, failed to maintain or caused the failure to maintain an Oil Record Book on the T/V Polar Discovery;

Two:  the defendant, by and through the actions of its agents and/or employees, acted willfully, that is deliberately and with knowledge that entries that were required to be made in the Oil Record Book were not being made, or that the entries that were being made were untrue; and

Three:  the omitted or false entries were material to accuracy of the Oil Record Book.

Under well-established principles of corporate liability and respondent superior, as these principles apply in this case, the corporate defendants are liable for the actions of their agents and employees. *United States v. Beusch*, 596 F.2d 871 (9th Cir. 1979); *United States v. Powder Puff Co.*, 163 F.2d 1008 (7th Cir.

1947); *New York Central and Hudson River R.R. v. United States*, 212 U.S. 481, 495 (1909).

## VII.  **FACTUAL BASIS FOR THE PLEA**

### Background

POLAR TANKERS, INC. is a United States company with its corporate headquarters in Houston, Texas.  Beginning at least in April of 2000 and continuing until the present, Polar Tankers, acting both directly and through its agents, affiliates and subsidiaries, operated and controlled a fleet of tanker vessels that transported crude oil from Alaska to ports on the west coast of the United States.  The tanker vessels in Polar Tanker's fleet are the Polar Adventure, Polar Discovery, Polar Endeavour, Polar Enterprise and Polar Resolution.

### The T/V Polar Discovery

The T/V Polar Discovery is an 895', 140,000-ton crude oil tanker vessel operated by Polar Tankers, Inc., a wholly-owned subsidiary of ConocoPhillips, and registered under the United States flag.  It makes frequent voyages to transport crude oil from Alaska to markets in Hawaii and ports on the west coast of the United States.

In January of 2004, the Polar Discovery departed Valdez, Alaska with a load of crude oil.  On January 16, approximately two days prior to arriving at its

destination, the vessel's engineering crew conducted a transfer of engine room sludge from tanks in the vessel's engine room, through the hard piping system, to a slop tank on deck. A system valve on the deck of the ship was open and resulted in the sludge spilling onto the deck of the ship rather than entering the slop tank as it should have. Additionally, a scupper (a hole on the deck that allows water to drain overboard) was open, thereby allowing the spilled sludge to drain overboard into the ocean.

In May 2004, the United States Coast Guard Marine Safety Office in Valdez received a phone call from a Polar Discovery crew member informing them that the Polar Discovery had had an oil spill on deck while transferring engine room sludge to a holding tank on deck. The crew member later provided video of the ship's crew as they attempted to clean the oil from the side of the ship.

The T/V Polar Discovery has a crew of approximately twenty-two personnel. Four crew members of different rank work in the engine room. The engine room crew members are: Chief Engineer, First Engineer, Second Engineer, and Third Engineer. Each engineer works two four-hour shifts each day. The engineers are responsible for the operation of the ship's engineering spaces and for managing the waste oil and bilge waste that is a regular byproduct of the vessel's operation. The management of waste is very important to the safety of the ship.

Engine room operations in large marine vessels such as the Polar Discovery produce quantities of waste oil and sludge. Fuel oil and lube oils must be purified before they can be used in the engines and generators. Among the waste oils produced are fuel oil sludge and lube oil sludge. As these sludges accumulate they must be stored in sludge tanks. Other waste oils, together with water and other liquids, accumulate in the bottom or "bilges" of the vessel. The bilge waste liquid typically drains into the "bilge wells," compartments set into the bottom of the vessel. The bilge waste is then collected and run through various processes designed to separate the oil and other wastes from the water.

The Act to Prevent Pollution from Ships requires that each oil tanker of more than 150 gross tons, such as the Polar Discovery, maintain a record known as an Oil Record Book. Entries must be made in the Oil Record Book for certain engine room operations, including the disposal of oil residue or the discharge overboard or disposal otherwise of bilge water that has accumulated in machinery spaces. 33 C.F.R. §151.25(d). The Oil Record Book must also record any emergency, accidental, or other exceptional discharges of oil or oily mixtures. 33 C.F.R. § 151.25(g). Each of these engine room operations, including the overboard discharge of bilge waste, is required to be fully recorded without delay in the Oil Record Book. 33 C.F.R. § 151.25(h). The entries are to be signed by the

person or persons in charge of the operation and each completed page must be

signed by the Master of the ship. 33 C.F.R. § 151.09. The Oil Record Book must

be maintained on board the vessel for not less than three years, and it must be kept

on board the vessel readily available for inspection at all reasonable times. 33

C.F.R. § 151.09. The Oil Record Book must be maintained on board the vessel for

not less than three years, and it must be kept on board the vessel readily available

for inspection at all reasonable times. 33 C.F.R. § 151.25(k). It is widely known

in the maritime industry that the U.S. Coast Guard regularly inspects the Oil

Record Book during inspections to determine compliance with U.S. law and

MARPOL and to assure that ships are not an environmental threat to U.S. ports and

waters.

On January 16, 2004, members of the Polar Discovery's engine room crew

caused the discharge of oily sludge overboard into the ocean without recording this

transfer of oil in the ship's Oil Record Book.

The Chief Engineer was the person who was primarily responsible for

keeping the ship's Oil Record Book. As Chief Engineer, he not only knew that the

Polar Discovery was required to maintain an Oil Record Book, but he also knew

that the Oil Record Book must accurately record the handling and transfer of oily

waste on the ship, including the transfer of sludge through the vessel's hard piping

system to a storage tank on deck. The Chief Engineer did not record the direct discharge of sludge in the Polar Discovery's Oil Record Book. Likewise, the Chief Engineer knew that no other crew member was recording this discharge in the Oil Record Book. The Chief Engineer's actions and omissions caused the Oil Record Book to contain false entries and to be inaccurate by failing to record these discharges of oily waste.

As of result of his skills and experience as a vessel captain, the Captain of the Polar Discovery was aware of requirements to maintain an Oil Record Book. In order to hide the fact that he and his crew potentially caused the discharge of this oily sludge directly into the ocean, the Captain used his knowledge and skill to manipulate the entry he made in the bridge log book to make it appear legitimate. Rather than recording that the vessel slowed down and turned away from the wind so that the ship's crew could clean oil from the side of the ship (a highly dangerous maneuver in its own right that would also have raised the suspicion of company officials who were monitoring the ship's progress via satellite), the Captain instead recorded that the ship had performed a man overboard drill.

//   //

//   //

//   //

## VIII. ADEQUACY OF THE AGREEMENT

This Agreement is appropriate in that it applies the same sentencing guideline provisions that would otherwise be applicable to the Defendant's sentence had the Defendant elected to proceed with trial and was thereafter convicted. The sentence to be imposed under the terms of this Agreement will serve to adequately protect the public and reaffirm societal norms, provide for deterrence to the Defendant and others, and provide an opportunity for the Defendant to improve its conduct.

The United States acknowledges that Polar Tankers had a compliance program in place at the time of the incidents discussed herein, voluntarily reported the incidents discussed herein to appropriate federal authorities, voluntarily undertook corrective measures subsequent to the January 16, 2004, waste oil transfer and related omission in the Oil Record Book that included dismissing the captain and chief engineer of the Polar Discovery, voluntarily engaged outside consultants to investigate all six ships in its fleet to review and evaluate its oil-water separator policies, waste stream management, and its overall environmental compliance program, modified existing equipment and purchased new equipment, upgraded relevant manuals, terminated other employees whom internal investigations determined to be at fault, evaluated ship-to-shore communications

and employees' understanding of company policies and procedures, increased ship-to-shore exchanges, created new positions, and upgraded internal monitoring efforts.

The United States also agrees that Polar Tankers cooperated with the United States' investigation into the January 16, 2004 oil record book violation by, among other things, voluntarily reporting the incident, waiving the attorney-client privilege, providing witness interview notes, memoranda, and internal investigation reports to the government, encouraging employees to cooperate with the government, facilitating crew members' interviews and grand jury appearances, providing access to vessels, and voluntarily making officers available to explain ships' operations, and taking steps to ensure that documentary and other evidence was provided to the United States in a manner that was timely and in a format that could by used by investigators.

## IX.   DEFENDANT'S AGREEMENT AND UNDERSTANDING OF THE TERMS OF THIS PLEA AGREEMENT

The Defendant agrees, by and through their duly authorized representatives, and being of sound mind and under no compulsion or threats, or promises not otherwise contained in this document, knowing that their representative will be put under oath at the plea hearing to tell the truth, do hereby state their agreement to and understanding of this Agreement as follows:

A.     Defendant POLAR TANKERS, INC. wishes to enter a plea of guilty to Count 1 of the Information, which charges it with violating the Act to Prevent Pollution from Ships by failing to maintain an Oil Record Book, in violation of 33 U.S.C. § 1908(a) and 33 C.F.R. § 151.25(a), (h).

B.     POLAR TANKERS' legal counsel has explained the charge to which the Defendant is pleading guilty and the necessary elements that the government must prove, as well as the consequences of this guilty plea.

C.     Defendant is admitting that the allegations against it in the Information and the factual basis for its guilty plea are true.

D.     With respect to the single count charge being resolved by this Agreement and so long as neither party withdraws from this Agreement under a provision of this Agreement permitting them to do so, Defendant understands that by pleading guilty it gives up and agrees to waive the following rights:

> --     The right to plead not guilty or to persist in that plea if it has already been made;
>
> --     The right to a speedy and public trial by a jury on the issue of guilt;
>
> --     The right to object to the composition of the grand or petit jury;

-- The right to be presumed innocent and not to suffer any
criminal penalty unless and until the Defendant's guilt is
established beyond a reasonable doubt;

-- The right to be represented by a lawyer at trial and if necessary
to have a lawyer appointed to represent the Defendant at trial-
the Defendant understands that it is not waiving its right to have
counsel represent it during the sentencing phase of this case;

-- The right to confront and cross examine witnesses against the
Defendant and the right to subpoena witnesses to appear in its
behalf;

-- The right to remain silent at trial, with such silence not to be
used against it, and the right to present testimony on its own
behalf;

-- The right to contest the validity of any searches conducted
on its property or person;

E.    Defendant is fully aware that if it were convicted after a trial and
sentence were imposed on it thereafter, it would have the right to appeal any aspect
of its conviction and sentence. Knowing this, Defendant voluntarily waives its
right to appeal its conviction and its right under 18 U.S.C. § 3742 to appeal any

aspect of the sentence imposed in this case, both only if the Court imposes a sentence within the parameters of this Agreement. Furthermore, if the Court imposes a sentence within the parameters of this Agreement, Defendant knowingly and voluntarily waives its right to collaterally attack any aspect of its conviction or sentence, except for a challenge based upon ineffective assistance of counsel -- based on Information not now known by it and which, in the exercise of due diligence, could not be known by it by the time the Court imposes the sentence-- which affected either its guilty plea or the sentence imposed by the Court. Defendant is fully satisfied with its representation given it by its attorneys. Defendant and counsel have discussed all possible defenses to the charges. Defendant's attorneys have investigated this case and followed up on any information and issues Defendant has raised with them to Defendant's satisfaction and counsel has taken the time to fully explain the legal and factual issues involved in this case to Defendant's satisfaction. The Defendant has discussed with counsel how its sentence will be calculated under the United States Sentencing Commission Guidelines, as well as the statutes applicable to this offense, and any other factor that will affect the sentence calculation in this case. We have also discussed the sentencing estimates prepared by the United States contained in this Agreement.

F.     Defendant further understands that if it pleads guilty, there will not be a trial and that the Court will ask the duly authorized representative under oath to answer questions about the offense charged. Defendant understands that it may be prosecuted if, through its representative, it makes false statements or gives false answers and may suffer other consequences set forth in this Agreement.

G.     Defendant understands that it has a right to plead not guilty and that no one can force it to plead guilty. If anyone, including its attorney, has done or said anything other than what is contained in this Agreement, Defendant will inform the judge when its representative appears in Court and stands before him to enter a plea.

H.     Defendant understands that no one, including its attorneys, can guarantee the outcome of its case or whether the Court will accept the plea and sentencing provisions of this Agreement.. The Defendant understands that the Court has the ultimate discretion to determine the sentence to be imposed in this case. The Defendant understands that it may withdraw from this Agreement, pursuant to Rule 11(c)(1)(C), only if the Court rejects the agreement or deviates from the sentencing recommendations made by the parties in this Agreement. If the Court accepts this Agreement and agrees to sentence the Defendant in conformity

with it, the Defendant may not withdraw its guilty plea or withdraw from this Agreement.

I.     Defendant understands that anything that it discusses with its attorneys is privileged and confidential, and cannot be revealed without its permission, except as provided herein. Knowing this, Defendant agrees that this document will be filed with the Court. The United States agrees that it will not treat same as evidence of any broader waiver of privilege.

J.     This document contains all of the agreements made between Defendant, its attorneys, and the attorneys for the United States regarding Defendant's pleas. There are no other promises, assurances, or agreements between Defendant, its attorneys, and the United States that have affected Defendant's decisions to enter a guilty plea or to enter into this Agreement. If there were, Defendant would so inform the Court. Defendant understands that if it breaches this Agreement in any way the United States will be free to prosecute the Defendant on all charges for which there is probable cause, arising out of the investigation of this case, and to reinstate any charges dismissed pursuant to this Agreement.

K.     Defendant, through its duly authorized representative, has read this Agreement carefully and understands it thoroughly. Defendant acknowledges the

factual basis outlined contained herein and knows of no reason why the Court

should find it, or its authorized representative, incompetent to enter into this

Agreement or to enter a guilty plea. Defendant enters into this Agreement

knowingly and voluntarily, and therefore wishes to enter a plea of guilty to the

count alleged against it in the Information in this case.

DATED: _15TH October 2007_          Signature _____

Print Name _GEORGE P. McSHEA Jr._

Print Title _VICE PRESIDENT_
POLAR TANKERS, INC.

As counsel for the Defendant, I have discussed with my corporate client and its duly authorized representative the terms of this Agreement, have fully explained the charge to which it is pleading guilty and the necessary elements, all possible defenses, and the consequences of its plea. Based on these discussions, I have no reason to doubt that the Defendant is knowingly and voluntarily entering into this Agreement and entering a plea of guilty. I know of no reason to question the competency of my corporate client or its duly authorized representative to make these decisions. If, prior to the imposition of sentence, I become aware of any reason to question the Defendant's competency to enter into this Agreement or to enter a plea of guilty, I will immediately inform the Court.

DATED: _10/18/07_

ROBERT C. BUNDY
Dorsey & Whitney LLP
Attorney for Polar Tankers, Inc.

On behalf of the United States, the following accept the offers of POLAR TANKERS, Inc. to plead guilty under the terms of this Agreement.

DATED: _10/17/07_

KAREN L. LOEFFLER
Assistant U.S. Attorney

DATED: _10/17/07_

NELSON P. COHEN
United States Attorney

US v POLAR TANKERS, INC.                    35